GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

TODD M. ALLISON
Assistant U.S. Attorney
Arizona State Bar No. 026936
M. BRIDGET MINDER
Assistant U.S. Attorney
Arizona State Bar No. 023356
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Todd.Allison@usdoj.gov
Email: Mary.Minder@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-21-00401-PHX-SRB |
|---|---|
| Plaintiff, | |
| vs. | **PLEA AGREEMENT** |
| Arthur Ching-Fu Gau, | |
| Defendant. | |

Plaintiff, United States of America, and the defendant, Arthur Ching-Fu Gau, hereby agree to dispose of this matter on the following terms and conditions:

1. **PLEA**

The defendant will plead guilty to an Information charging the defendant with a violation of Title 50, United States Code (U.S.C.), § 1705(a); and Title 15, Code of Federal Regulation (C.F.R.), §§ 742.4, 764.2, and 774 Supp. No. 1; Exporting Items Without a License in Violation of the International Emergency Economic Powers Act (IEEPA), a Class C felony offense.

2. **MAXIMUM PENALTIES**

 a. A violation of 50 U.S.C. § 1705(a); and 15 C.F.R. §§ 742.4, 764.2, and 774 Supp. No. 1, is punishable by a maximum fine of $1,000,000, a maximum term of

imprisonment of 20 years, or both, and a term of supervised release of three years. A maximum term of probation is five years.

    b.    According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

        (1)    make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

        (2)    pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

        (3)    serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

        (4)    pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

    c.    The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

**3.    <u>AGREEMENTS REGARDING SENTENCING</u>**

    a.    <u>Acceptance of Responsibility</u>.  If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will move the Court for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

b. <u>Sentencing Recommendation</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend a sentence no higher than the low end of the applicable sentencing range. This recommendation does not preclude the defendant from asking for a sentence below the Sentencing Guidelines range or the government from recommending a lower sentence based upon additional factors learned during the sentencing process.

c. <u>Non-Binding Recommendations</u>. The defendant understands that recommendations are not binding on the Court. The defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

d. <u>Stipulation: Base Offense Level Calculation</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the defendant's base offense level is a level 26, based on U.S.S.G. § 2M5.1(a)(1)(A), as the defendant's offense involved the evasion, or intended evasion, of national security controls or controls relating to the proliferation of nuclear, biological, or chemical weapons or materials.

e. <u>Assets and Financial Responsibility</u>. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

**4.     AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

a.     This office shall not prosecute the defendant for any offenses committed by the defendant, and known by the United States, in connection with the charge in the information and the factual basis of this agreement.

b.     This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**5.     COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a.     If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b.     If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

**6.     WAIVER OF DEFENSES AND APPEAL RIGHTS**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under

18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

7.  **DISCLOSURE OF INFORMATION**

    a.    The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

    b.    Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

    c.    The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

        (1)    criminal convictions, history of drug abuse, and mental illness; and

        (2)    financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

8.  **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which

offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

**9. ELEMENTS**

**Exporting Items Without a License in Violation of the
International Emergency Economic Powers Act (IEEPA)**

From between at least October 10, 2017, through at least October 13, 2017, in the District of Arizona and elsewhere:

1. The defendant exported, attempted to export, or caused the export of items from the United States;

2. The items the defendant exported, attempted to export, or caused to be exported were controlled for export on the Commerce Control List and required an export license for the destination;

3. The defendant failed to obtain a license or other authorization from the Department of Commerce prior to exporting the items; and

4. The defendant did so knowingly and willfully.[1]

**10. FACTUAL BASIS**

The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

> From 1996 to 2018, I worked as an engineer at Company-1 in Arizona. My work at Company-1 included (among other things) aviation-related projects for commercial, government, and military customers.

---

[1] For purposes of an IEEPA violation, a defendant acts "willfully" if he acted intentionally and purposefully with the intent to do something the law forbids, that is, with bad purpose to disobey or to disregard the law. The defendant does not need to be aware of the specific law or rule that his conduct would violate. In other words, the defendant does not have to know that his conduct would violate a particular law, executive order or federal regulation, but he must act with the intent to do something the law forbids.

Around the same time I began working at Company-1, I met certain individuals in China, including G.Z. and Z.R., who asked me to travel to China to give presentations on topics related to my work at Company-1. I made at least three trips to China between 1997 and 2003. In and around 2003, Z.R. sent me at least one detailed tasking letter, asking me to obtain and provide him with specific information on certain of Company-1's aviation projects in exchange for payment. I did not perform the tasks in Z.R.'s letter and lost contact with Z.R. and G.Z. for approximately ten years.

In January 2014, I received an email from Z.R. Later, in January 2016, I exchanged emails with Z.R, and around that time, I also started exchanging text messages with Z.R. I later learned that some of the messages I thought I was exchanging with Z.R. were, in fact, with another individual, Xu Yanjun.[2] In March 2016, I met with Xu and Z.R. in Beijing, China. During the meeting, Xu gave me approximately $3,000 in cash; because of the payment, I felt obligated to email Xu some technical information soon after I returned to the United States.

Xu then introduced me to W.H., with whom I exchanged messages via email and encrypted text-messaging platforms. W.H. later asked me to travel to China in October 2017 to give a presentation, and W.H. planned my entire trip. Shortly before my October 2017 trip, W.H. sent me a list of topics to cover in my presentation, and I prepared PowerPoint presentations based on her requests. On October 10, 2017, while I was in the District of Arizona, I emailed my PowerPoint presentations to W.H., who I knew resided in China. Later, on October 10, 2017, I traveled from Phoenix, Arizona, to Nanjing, China. On October 13, 2017, I gave a presentation in China to multiple attendees, including Xu and W.H. When I arrived in China, W.H. had copies of my PowerPoint presentations. During my presentation on October 13, 2017, I referred to, and discussed, the material in my PowerPoint presentations. Prior to returning to the United States, Xu gave me approximately $1,200 for my plane ticket to China and an additional $5,000 in cash.

The PowerPoint presentations that I emailed to W.H. on October 10, 2017, and presented in China on October 13, 2017, included technical data related to the electronic control unit of one of Company-1's legacy aircraft auxiliary power units. The technical data included the following: (1) a single slide containing a control law algorithm for starting an auxiliary power unit, and (2) 14 slides that show logic diagrams of various aspects of control system logic design including control algorithms and protective features (collectively, the "Technical Data"). When I created the PowerPoint presentations for W.H., I obtained the Technical Data from various Company-1 materials I had taken home from Company-1. I admit the United States can prove, beyond a reasonable doubt, that the Technical Data was controlled for export on the Commerce Control List and required a license for export from the United States to China. I did not obtain a license or other authorization from the United States Department of Commerce prior to exporting these items to China.

---

[2] Xu has been charged with Economic Espionage (18 U.S.C. § 1831) and Theft of Trade Secrets (18 U.S.C. § 1832) and related crimes in the Southern District of Ohio, Case No. 18-CR-00043-TSB.

I further admit that, in emailing the presentations to W.H. and giving the presentations in China shortly thereafter, I acted intentionally and purposefully with the intent to do something the law forbids. Although I may not have been aware of the specific law or regulation my conduct violated, I was aware that I could not export certain technological data from Company-1, including data that was in my PowerPoint presentations, with individuals in China.

The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

Nov 16, 2021
Date

ARTHUR CHING-FU GAU
Defendant

### APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences

of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

5/26/21
Date

GREGORY BARTOLOMEI
Attorney for Defendant

**APPROVAL OF THE UNITED STATES**

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

5/26/21
Date

TODD M. ALLISON
M. BRIDGET MINDER
Assistant U.S. Attorneys

**ACCEPTANCE BY THE COURT**

3/10/2022
Date

Susan R. Bolton
HONORABLE SUSAN R. BOLTON
United States District Judge

of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

5/26/21
Date

GREGORY BARTOLOMEI
Attorney for Defendant

**APPROVAL OF THE UNITED STATES**

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

5/26/21
Date

TODD M. ALLISON
M. BRIDGET MINDER
Assistant U.S. Attorneys

**ACCEPTANCE BY THE COURT**

3/10/2022
Date

HONORABLE SUSAN R. BOLTON
United States District Judge